**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| PROPERTY OF THE PEOPLE, INC.,<br>*et al.*<br><br>    Plaintiffs,<br><br> v.<br><br>DEPARTMENT OF JUSTICE,<br><br>    Defendant. | No. 17-cv-1728 (EGS) |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Property of the People, Inc., a non-profit organization, and its founder, Ryan Noah Shapiro, bring this lawsuit against the United States Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiffs seek records from the Federal Bureau of Investigation ("FBI")—a component of DOJ—concerning its investigative and non-investigative files of a former Congressman who publicly confirmed that the FBI warned him that Russian spies were attempting to recruit him. Pending before the Court are the parties' cross-motions for summary judgment. Upon careful consideration of the parties' submissions, the applicable law, and the entire record, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Renewed Motion for Summary Judgment and **GRANTS IN PART, DENIES IN PART**, and **HOLDS IN ABEYANCE IN PART** Plaintiffs' Cross-Motion for Summary Judgment. The Court **DEFERS**

ruling on the issues of segregability and the applicability of the "official acknowledgement" doctrine with respect to certain redactions.

## I. Background

On May 19, 2017, the *New York Times* published an article stating that, in 2012, the FBI warned former Congressman Dana Rohrabacher of California that Russian spies were attempting to recruit him as an "agent of influence." Pls.' Ex. 1, ECF No. 26-3 at 3; *see also* Pls.' Statement of Material Facts ("Pls.' SOMF"), ECF No. 26-1 at 1 ¶ 1.[1] In an interview for the article, Congressman Rohrabacher confirmed that the FBI met with him and that "meeting had focused on his contact with one member of the Russian Foreign Ministry, whom he recalled meeting on a trip to Moscow." Pls.' SOMF, ECF No. 26-1 at 1 ¶ 1. The article includes a quote from Congressman Rohrabacher, stating that the FBI agents "were telling [him that] he had something to do with some kind of Russian intelligence" and one of the agents told him that "Moscow 'looked at [him] as someone who could be influenced.'" *Id*. 1 ¶ 2; *see also* Pls.' Ex. 5, ECF No. 26-3 at 16 ("[Congressman] Rohrabacher has been of value to the Kremlin, so valuable in recent years that the F.B.I. warned him in 2012

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

that Russia regarded him as an intelligence source worthy of a Kremlin code name.").[2]

On May 20, 2017, Plaintiffs submitted a FOIA request to the FBI, seeking: "Any and all records constituting, mentioning, or referring to the living person **Dana Tyrone Rohrabacher** . . . . This request is intended to include both investigative and non-investigative files (e.g. correspondence to or from Rep. Rohrabacher in his capacity as a member of Congress)." Ex. A, Decl. of Michael G. Seidel ("Seidel Decl."), ECF No. 24-1 at 45

---

[2] Congressman Rohrabacher served in Congress from 1989 to 2019, losing his bid for re-election in 2018. *See* Pls.' Cross-Mot. for Summ. J. ("Pls.' Mot."), ECF No. 26 at 8 n.2; *see also* Pls.' Reply, ECF No. 32 at 26. The Court takes judicial notice of the existence of news articles concerning Congressman Rohrabacher. *See Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 113 (D.D.C. 2015). News articles have documented Congressman Rohrabacher's foreign contacts: (1) "[d]uring a trip to Moscow in April 2016, Rohrabacher met Natalia Veselnitskaya, the Russian lawyer who traveled to Trump Tower in New York two months later to meet with Donald Trump Jr.[,]" Pls.' Ex. 4, ECF No. 26-3 at 10; (2) "[d]uring a trip to London in August 2016, he met with WikiLeaks founder Julian Assange, who controlled the release of hacked emails damaging to Hillary Clinton[,]" *id.* at 11; and (3) "at a meeting on Capitol Hill in early 2017, he met with Alexander Torshin, the deputy governor of the Russian central bank, a controversial figure who also briefly met Trump Jr. at a May 2016 gun convention[,]" *id.* It has also been reported that "[i]n July [2018], Mr. Rohrabacher admitted to meeting with Maria Butina, who was charged by federal prosecutors . . . with conspiracy and acting as a foreign agent, during his trip to Russia in 2015." Adam Nagourney, *Dana Rohrabacher Loses, Eroding Republican Foothold in California*, N.Y. Times (Nov. 10, 2018), https://www.nytimes.com/2018/11/10/us/politics/dana-rohrabacher-loses-harley-rouda.html; *see also* J., *United States v. Mariia Butina*, Criminal Action No. 18-218 (D.D.C. May 1, 2019), ECF No. 123.

(emphasis in original). Plaintiffs attached the *New York Times*
article to their request, and they explained that Congressman
Rohrabacher "is known for his friendship with Vladimir Putin and
defense of Russia." *Id*. at 46. Plaintiffs asserted that
Congressman Rohrabacher waived his privacy interests because he
publicly disclosed the 2012 meeting. *Id*. Upon receipt of the
FOIA request, the FBI declined to confirm or deny the existence
of any investigative records—in FOIA terms, a *Glomar* response—to
protect the privacy rights of third parties. Def.'s Statement of
Material Facts ("Def.'s SOMF"), ECF No. 24 at 6 ¶¶ 13-15.[3]

In its *Glomar* response, the FBI advised Plaintiffs that it
could not confirm or deny the existence of any other records
pertaining to Congressman Rohrabacher unless one of three
conditions were met: "(1) the requester provides a notarized
authorization (privacy waiver) from the third party, (2) the
requester provides proof of death, or (3) the requestor
demonstrates a public interest in the records sufficient to

---

[3] In FOIA parlance, the *Glomar* response is a disclaimer that
neither confirms nor denies the existence of records. *Bartko v.
U.S. Dep't of Justice*, 898 F.3d 51, 63 n.1 (D.C. Cir. 2018).
"The response is named for the *Hughes Glomar Explorer*, a ship
used in a classified Central Intelligence Agency project 'to
raise a sunken Soviet submarine from the floor of the Pacific
Ocean to recover the missiles, codes, and communications
equipment onboard for analysis by United States military and
intelligence experts.'" *Roth v. U.S. Dep't of Justice*, 642 F.3d
1161, 1171 (D.C. Cir. 2011) (quoting *Phillippi v. CIA*, 655 F.2d
1325, 1327 (D.C. Cir. 1981)).

outweigh the third party's individual privacy rights." *Id*. at 6
¶ 13. Subsequently, the FBI modified its *Glomar* response,
determined that Congressman Rohrabacher waived his privacy
interests by making public statements about the 2012 meeting,
and conducted a search for responsive records. Seidel Decl., ECF
No. 24-1 at 9-10 ¶ 18.

The FBI used its databases—the Central Records System
("CRS"), the Universal Index ("UNI") application of the
Automated Case Support ("ACS") system, and the next generation
case management system ("Sentinel")—for the initial search.
Def.'s SOMF, ECF No. 24 at 7-8 ¶¶ 22-23, 8 ¶¶ 24-26. The FBI
crafted search terms, including "Dana Tyrone Rohrabacher," "Dana
T. Rohrabacher," and "Dana Rohrabacher," and the FBI used
Congressman Rohrabacher's date of birth and other personal
identifying information. Seidel Decl., ECF No. 24-1 at 17-18 ¶
35. The FBI contacted its Office of Congressional Affairs, the
Washington Field Office, and the Office of the Executive
Secretariat to find responsive records. Def.'s SOMF, ECF No. 24
at 8 ¶ 29, 9 ¶ 31; *see also* Seidel Decl., ECF No. 24-1 at 17 ¶
34. The FBI searched the internal databases of the Office of
Congressional Affairs and the Office of the Executive
Secretariat. *See* Seidel Decl., ECF No. 24-1 at 21 ¶ 42; *see also*
Decl. of David M. Hardy ("Hardy Decl."), ECF No. 30-1 at 10 ¶
17. Unsatisfied, Plaintiffs challenged the adequacy of the

searches. Seidel Decl., ECF No. 24-1 at 19 ¶ 38.

Following an administrative appeal of a fee waiver, *id*. at 4 ¶ 9, Plaintiffs filed this action on August 24, 2017. *See generally* Compl., ECF No. 1. The FBI released 230 responsive pages pertaining to Congressman Rohrabacher between January and March 2018, and 29 pages in November 2018. *See, e.g.*, Def.'s SOMF, ECF No. 24 at 5 ¶¶ 6-10; Pls.' Resp. to Def.'s SOMF, ECF No. 25-1 at 2-3; Seidel Decl., ECF No. 24-1 at 21 ¶ 43. The FBI withheld certain documents and redacted information under FOIA Exemptions 3, 6, 7(C), (7)(D), and (7)(E).[4] Def.'s SOMF, ECF No. 24 at 5 ¶ 7, 6 ¶ 10. As the FBI made its productions, the parties filed cross-motions for summary judgment in May and June 2018, respectively. *See generally* Docket of Civil Action No. 17-1728.

---

[4] Under FOIA, an agency must release all responsive documents unless the information contained within such documents falls within one of nine exemptions. *Summers v. U.S. Dep't of Justice*, 517 F. Supp. 2d 231, 236 (D.D.C. 2007) (Sullivan, J.) (citing 5 U.S.C. § 552(a),(b)). Exemption 3 permits an agency to withhold information that is "specifically exempted from disclosure by statute," provided that the statute either (i) "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue"; or (ii) "establishes particular criteria for withholding or refers to particular types of matters to be withheld[.]" 5 U.S.C. § 552(b)(3). Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" *Id*. § 552(b)(6). Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. *Id*. § 552(b)(7).

After litigation had already begun, Plaintiffs learned that Congressman Rohrabacher, Paul J. Manafort, Jr. ("Mr. Manafort"), and "a senior Company A lobbyist" attended a March 2013 meeting about Ukraine in the District of Columbia, and Plaintiffs sought the FBI's records regarding the investigation into that meeting.[5] Pls.' Cross-Mot. for Summ. J., ECF No. 16 at 12; *see also* Statement of Offense, *United States v. Richard W. Gates III*, Criminal Action No. 17-201-2 (D.D.C. Feb. 23, 2018), ECF No. 206 at 7 ¶ 16 (stating that the "Member of Congress," who met with Mr. Manafort and the lobbyist, served "on a subcommittee that had Ukraine within its purview").[6] Congressman Rohrabacher's

---

[5] In February 2018, Richard W. Gates III ("Mr. Gates") pled guilty to conspiring with Mr. Manafort to defraud the United States and to making false statements to the FBI and the Special Counsel's Office ("SCO"). Plea Agreement, *United States v. Richard W. Gates III*, Criminal Action No. 17-201-2 (D.D.C. Feb. 23, 2018), ECF No. 205 at 1 ¶ 1. Mr. Gates "stated falsely that he was told by [Mr.] Manafort and the senior Company A lobbyist that there were no discussions of Ukraine at the meeting." Pls.' Cross-Mot. for Summ. J., ECF No. 16 at 12 (citation omitted).

[6] From 2017 to 2019, Special Counsel Robert S. Mueller III investigated Russia's interference in the 2016 presidential election. *See, e.g.*, *In re Grand Jury Investigation*, No. MC 17-2336 (BAH), 2017 WL 4898143, at *1 (D.D.C. Oct. 2, 2017); *United States v. Stone*, No. CR 19-0018 (ABJ), 2019 WL 3502929, at *20 (D.D.C. Aug. 1, 2019). The SCO uncovered evidence that resulted in various indictments. *See, e.g.*, Redacted Indictment, *United States v. Paul J. Manafort, Jr. & Richard W. Gates, III*, Criminal Action No. 17-201 (D.D.C. Oct. 30, 2017), ECF No. 13; Superseding Indictment, *United States v. Konstantin Kilimnik*, Criminal Action No. 17-201-3, (D.D.C. June 8, 2018), ECF No. 318; Indictment, *United States v. Bijan Rafiekian & Kamil Ekim Alptekin*, Criminal Action No. 18-457 (E.D. Va. Dec. 12, 2018), ECF No. 1; Indictment, *United States v. Gregory B. Craig*, Criminal Action No. 19-125 (D.D.C. Apr. 11, 2019), ECF No. 1;

spokesperson confirmed that he was the "Member of Congress" referenced in the court filing, and that former Congressman Vin Weber, who was a lobbyist, attended the meeting. Pls.' SOMF, ECF No. 26-1 at 4 ¶¶ 12-13; *see also* Pls.' Ex. 8, ECF No. 26-3 at 37-38.

In September 2018, the government withdrew its motion for summary judgment to conduct an additional search after the initial round of briefing. Def.'s Notice of Withdrawal, ECF No. 19 at 1. The FBI searched for responsive records regarding the SCO's investigation, but that search did not yield any responsive records. Seidel Decl., ECF No. 24-1 at 18 ¶ 36. The FBI also contacted the SCO, and the SCO confirmed that there were no records within the scope of Plaintiffs' FOIA request. *Id*. at 19 ¶ 37. The FBI maintained that it could neither confirm nor deny responsive investigative records concerning Congressman Rohrabacher *outside* of his official duties as a member of

---

Indictment, *United States v. Roger Jason Stone, Jr.*, Criminal Action No. 19-18 (D.D.C. Jan. 24, 2019), ECF No. 1. And the SCO charged certain individuals with making false statements, obstruction of justice, or witness tampering. *See, e.g.*, Information, *United States v. George Papadopoulos*, Criminal Action No. 17-182 (D.D.C. Oct. 3, 2017), ECF No. 8; Information, *United States v. Michael T. Flynn*, Criminal Action No. 17-232 (D.D.C. Nov. 30, 2017), ECF No. 1; Information, *United States v. Alex van der Zwaan*, Criminal Action No. 18-31 (D.D.C. Feb. 16, 2018), ECF No. 1; Information, *United States v. W. Samuel Patten*, Criminal Action No. 18-260 (D.D.C. Aug. 31, 2018), ECF No. 1; Information, *United States v. Michael Cohen*, Criminal Action No. 18-850 (S.D.N.Y. Nov. 29, 2018), ECF No. 2.

Congress. *Id*. at 41 ¶ 83. The FBI released records "associated with Congressman Rohrabacher's execution of his official duties as a United States Congressman." *Id*. Dissatisfied, Plaintiffs challenged the search and the scope of the *Glomar* response. *See* Hardy Decl., ECF No. 30-1 at 3 ¶ 6, 5 ¶ 10.

The parties renewed their cross-motions for summary judgment. In the second round of briefing, DOJ argues that it is entitled to summary judgment because it properly applied the *Glomar* response, it conducted adequate searches, it appropriately invoked Exemptions 3, 6, 7(C), 7(D), and 7(E), and it reasonably segregated the non-exempt information from the exempt information. Def.'s Renewed Mot. for Summ. J. ("Def.'s Mot."), ECF No. 24 at 20-30. In support of its motion, DOJ submits two declarations from the FBI's Assistant Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), *see* Seidel Decl., ECF No. 24-1 at 1 ¶ 1, and the FBI's Section Chief of RIDS, IMD, *see* Hardy Decl., ECF No. 30-1 at 1 ¶ 1.[7] Plaintiffs move for summary

---

[7] Although the Hardy declaration was attached to DOJ's reply brief, the Court may "rel[y]on supplemental declarations submitted with an agency's reply memorandum to cure deficiencies in previously submitted declarations where, as here, the '[p]laintiff filed no motion for leave to file a surreply challenging [the] defendant's supplemental declarations.'" *DeSilva v. U.S. Dep't of Hous. & Urban Dev*., 36 F. Supp. 3d 65, 72 (D.D.C. 2014) (quoting *Judicial Watch, Inc. v. FDA*, 514 F. Supp. 2d 84, 89 n. 1 (D.D.C. 2007)).

judgment, *see* Pls.' Mot., ECF No. 26 at 1, arguing that: (1) the declarations constitute hearsay and the declarants lack personal knowledge, *id.* at 6-8; (2) the *Glomar* response is unwarranted because the "FBI has narrowly pierced the *Glomar* veil by carving out a category of responsive documents," *id.* at 11; (3) the FBI improperly invokes Exemption 7(C) because Congressman Rohrabacher has a *de minimis* privacy interest, *id.* at 9-12; (4) the FBI failed to conduct adequate searches of its investigative records, *id.* at 16-24, and its records related to Congressman Rohrabacher in his official capacity as a U.S. Congressman, *id.* at 24-26; and (5) the FBI improperly withheld the names of certain individuals because it has previously "officially acknowledged" the identities of those persons in the released documents, *see* Pls.' Reply, ECF No. 32 at 27-28. In DOJ's memorandum in opposition to Plaintiffs' cross-motion for summary judgment and reply memorandum in support of its renewed motion for summary judgment, Plaintiffs received notice that the FBI implemented a July 15, 2017 cutoff date for the SCO's search. *See, e.g.*, Def.'s Opp'n & Reply Mem. in Supp. of Def.'s Mot. ("Def.'s Opp'n"), ECF No. 30 at 20; Hardy Decl., ECF No. 30-1 at 8 ¶ 15 n.4. The motions are ripe and ready for the Court's adjudication.

## II. Legal Standard

The "vast majority" of FOIA cases can be resolved on

summary judgment. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court may grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Likewise, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 658 F. Supp. 2d 217, 224 (D.D.C. 2009) (citation omitted). Under FOIA, "the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester[,]" and summary judgment is appropriate only after "the agency proves that it has fully discharged its [FOIA] obligations . . . ." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citations omitted).

When considering a motion for summary judgment under FOIA, the court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B). The court may grant summary judgment based on information provided in an agency's affidavits or declarations when they are "relatively detailed and non-conclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted), and "not controverted by either contrary evidence in the record nor by evidence of agency

bad faith[,]" *Military Audit Project v. Casey*, 656 F.2d 724, 738

(D.C. Cir. 1981). Such affidavits or declarations are "accorded

a presumption of good faith, which cannot be rebutted by purely

speculative claims about the existence and discoverability of

other documents." *SafeCard*, 926 F.2d 1197 at 1200 (citation and

internal quotation marks omitted).

## III. Analysis

The cross-motions for summary judgment raise four main

issues: (1) whether the partial *Glomar* response was proper;

(2) whether the FBI made a good faith effort to conduct a search

for the requested documents; (3) whether the FBI waived its

claimed exemptions to certain information that the agency has

"officially acknowledged" by previously releasing such

information; and (4) whether the Court should consider the

agency declarations that contain hearsay and purportedly fail to

attest to the declarants' familiarity with the documents in

question.[8] The Court will address each argument in turn.

### A. The FBI's Partial *Glomar* Response

DOJ argues that the FBI properly issued a *Glomar* response,

---

[8] Plaintiffs do not contest the applicability of the withholdings
under Exemptions 3, 7(D), and 7(E). *See* Pls.' Mot., ECF No. 26
at 1-31; *see also* Def.'s Mot., ECF No. 24 at 23, 28-30. The
Court therefore treats those matters as conceded. *See Hopkins v.
Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15,
25 (D.D.C. 2003) ("It is well understood in this Circuit that
when a plaintiff files an opposition to a dispositive motion and
addresses only certain arguments raised by the defendant, a

refusing to confirm or deny the existence of certain records relating to Congressman Rohrabacher. Def.'s Opp'n, ECF No. 30 at 8. After Congressman Rohrabacher publicly acknowledged his interactions with the FBI, the FBI confirmed that records existed for three categories: (1) "records reflecting communications between it and the Congressman in the performance of his official duties[,]" *id.*; (2) records relating to communications between the Congressman and the FBI concerning the 2012 meeting, *id.* at 8-9; and (3) "records related to the statement of offense in the [Mr.] Gates prosecution that [Mr.] Manafort and a lobbyist for 'Company A' had met with a 'member of Congress[,]'" *id.* at 9. Characterizing the FBI's approach as "narrowly pierc[ing] the *Glomar* veil," Pls.' Mot., ECF No. 26 at 11, Plaintiffs contend that the FBI "carved out from its *Glomar* response records relating to specific, narrow instances" and that "approach is not consistent with D.C. Circuit precedent[,]" Pls.' Reply, ECF No. 32 at 12-13.

A *Glomar* response is appropriate "only when confirming or denying the existence of records would itself 'cause harm cognizable under a FOIA exception.'" *ACLU v. CIA*, 710 F.3d 422,

---

court may treat those arguments that the plaintiff failed to address as conceded." (citation omitted)), *aff'd sub nom. Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries, United Methodist Church*, 98 F. App'x 8 (D.C. Cir. 2004). Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to the withholdings under Exemptions 3, 7(D), and 7(E).

426 (D.C. Cir. 2013) (quoting *Roth*, 642 F.3d at 1178). "When addressing an agency's *Glomar* response, courts must accord 'substantial weight' to agency determinations." *Sea Shepherd Conservation Soc'y v. IRS*, 208 F. Supp. 3d 58, 89 (D.D.C. 2016) (citing *Gardels v. CIA*, 689 F.2d 1100, 1104 (D.C. Cir. 1982)). The agency must "tether its refusal to respond to one of the nine FOIA Exemptions." *Montgomery v. IRS*, No. CV 17-918 (JEB), 2019 WL 2930038, at *2 (D.D.C. July 8, 2019) (citation omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (quoting *Gardels*, 689 F.2d at 1105).

The parties disagree about whether "there exists a [narrow] category of responsive documents for which a *Glomar* response would be unwarranted[.]" *PETA v. Nat'l Inst. of Health*, 745 F.3d 535, 545 (D.C. Cir. 2014). The United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has applied the categorical rule—the "*SafeCard* rule"—"permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (citation and internal quotation marks omitted). The D.C. Circuit has

clarified this rule as follows:

> [W]e do not read *SafeCard* as permitting an agency to exempt from disclosure *all* of the material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen or provides that person's name and address. Because such a blanket exemption would reach far more broadly than is necessary to protect the identities of individuals mentioned in law enforcement files, it would be contrary to FOIA's overall purpose of disclosure, and thus is not a permissible reading of Exemption 7(C).

*Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (emphasis in original). For example, in *Citizens for Responsibility & Ethics in Washington v. U.S. Department of Justice*, 746 F.3d 1082, 1094 (D.C. Cir. 2014) ("*CREW*"), the D.C. Circuit determined that the FBI's *Glomar* response was inappropriate where "DOJ [did] not seek to withhold only the identities of private citizens; it [sought] to withhold every responsive document *in toto*."

In this case, the Court observes that the FBI's partial *Glomar* response does not categorically withhold *all* responsive records. *See* Def.'s Opp'n, ECF No. 30 at 8. The FBI has searched for responsive records regarding Congressman Rohrabacher's public statements, set forth above, and the FBI has invoked *Glomar* as to the existence or non-existence of any other records. *See id*. at 12-13. Plaintiffs, however, continue to attack the partial *Glomar* response. "To overcome a *Glomar*

response, the plaintiff[s] can either challenge the agency's
position that disclosing the existence of a record will cause
harm under the FOIA exemption asserted by the agency, or the
plaintiff[s] can show that the agency has 'officially
acknowledged' the existence of records that are the subject of
the request." *James Madison Project v. Dep't of Justice*, 320 F.
Supp. 3d 143, 148 (D.D.C. 2018). Here, Plaintiffs have selected
the first route to attack the FBI's partial *Glomar* response, *see
id.*, arguing that Congressman Rohrabacher has "little privacy
interest in the fact of the existence or nonexistence of [the
investigative] records associating him with an FBI
investigation." Pls.' Mot., ECF No. 26 at 11. The FBI concedes
that it was required to search for records that have been
publicly confirmed by Congressman Rohrabacher. Def.'s Opp'n, ECF
No. 30 at 12. Plaintiffs, however, argue that the FBI has failed
to justify its *Glomar* response.

Here, the FBI justifies its invocation of *Glomar* under
Exemptions 6 and 7(C). *E.g.*, Def.'s Opp'n, ECF No. 30 at 9;
Hardy Decl., ECF No. 30-1 at 3-4 ¶ 6, 5 ¶ 9. Both exemptions are
foundationally similar. *See, e.g.*, *Garza v. U.S. Marshals Serv.*,
No. CV 16-0976, 2018 WL 4680205, at *11 (D.D.C. Sept. 28, 2018)
(Sullivan, J.); *Am. Ctr. for Law & Justice v. U.S. Dep't of
Justice*, 334 F. Supp. 3d 13, 18 (D.D.C. 2018) (recognizing that
"[c]ourts tasked with evaluating withholdings made pursuant to

both statutory exemptions generally look first to the agency's justification under Exemption 7(C), because information properly withheld under Exemption 7(C) would also be covered by Exemption 6"). Plaintiffs focus on Exemption 7(C), *see, e.g.*, Pls.' Mot., ECF No. 26 at 11; Pls.' Reply, ECF No. 32 at 14, and this Court will follow suit.

Exemption 7(C) protects from disclosure records compiled for law enforcement purposes to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id*. § 552(b)(7)(C). "[J]udicial review of an asserted Exemption 7 privilege requires a two-part inquiry." *FBI v. Abramson*, 456 U.S. 615, 622 (1982). The threshold requirement has been met here because it is undisputed that the FBI's records were compiled for law enforcement purposes. *See* 5 U.S.C. § 552(b)(7); *see also* Seidel Decl., ECF No. 24-1 at 7 ¶ 15 ("[T]he records include contacts by Congressman Rohrabacher to the FBI regarding its duties and responsibilities as a law enforcement and national security agency, and the information discussed between the FBI and Congressman relate to the FBI's investigative role and obtained from investigative records."). Next, the FBI "must show that release of those records 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'" *Prop. of People v. U.S. Dep't of Justice*, 310 F. Supp. 3d 57, 65-66

(D.D.C. 2018) (quoting 5 U.S.C. § 552(b)(7)(C)).

The Court must "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992). The D.C. Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard*, 926 F.2d at 1206. Where a FOIA request "is made for FBI investigative records regarding a particular individual, the FBI's mere acknowledgment that it possesses responsive records associates the individual named in the request with suspected criminal activity." *CREW*, 746 F.3d at 1091. As such, "the FBI's *Glomar* response, absent a countervailing public interest in disclosure, [is] appropriate under Exemption 7(C)." *Roth*, 642 F.3d at 1179.

The FBI's first declaration cites its policy of categorically withholding investigatory records concerning a third party unless he consents, there is proof of his death, or there is a demonstrated overriding public interest. Seidel Decl., ECF No. 24-1 at 8 ¶ 17. Absent the third party's consent and a death certificate, the FBI determined that the privacy

interests at stake outweighed the public interest here. *See id.* at 12 ¶ 24 (stating that "the mere presence of FBI records concerning any individual in connection with an FBI investigation, should they exist, could cast the individual in an unfavorable or negative light to members of the public"). The FBI's second declaration avers that "if [investigative] records, that may or may not exist, were released, they would only provide a narrow view of specific FBI counterintelligence actions, and not a broader understanding of the government's operations or activities regarding the countering of Russian efforts to influence the U.S. political and electoral system." Hardy Decl., ECF No. 30-1 at 5 ¶ 8.

Plaintiffs do not challenge the FBI's policy, but they dispute the FBI's determination after weighing the competing interests. Plaintiffs contend that the public interest in knowing how the FBI handled the counterintelligence matter involving Congressman Rohrabacher tips the balance in favor of disclosure. *See* Pls.' Mot., ECF No. 26 at 11-13. Plaintiffs acknowledge that "in some cases a blanket *Glomar* response made pursuant to Exemption 7(C) can be sustained after a carve-out is made for 'a category of responsive documents for which a *Glomar* response would be unwarranted[.]'" *Id.* at 11 (quoting *PETA*, 745 F.3d at 545). Nonetheless, Plaintiffs argue that in this case "neither the documents to be carved out nor the remaining

documents fall into groupings as to which balancing as a categorical matter would be appropriate." *Id*. at 12.

To determine whether DOJ properly balanced the competing interests when it declined to confirm or deny the existence of any other investigative records concerning Congressman Rohrabacher, the Court first addresses the privacy interest, then turns to the public interest, and concludes with balancing the competing interests at stake.

### 1. Privacy Interest

Plaintiffs argue—and the Court disagrees—that Congressman Rohrabacher has a *de minimis* privacy interest. *See* Pls.' Mot., ECF No. 26 at 11. Plaintiffs contend that "[o]nce [Congressman] Rohrabacher disclosed his association with an FBI investigation . . ., the sole privacy interest identified by the FBI no longer applies." *Id*. at 12. Plaintiffs point out that Congressman Rohrabacher's public statements about his interactions with the FBI "negate his privacy interest." *Id*. at 9. Contrary to Plaintiffs' assertion, the FBI's declarant avers that the "negative stigma attached to disclosing an individual's association with any specific FBI investigation" is not negated by the fact that Russian intelligence services have targeted a Congressman. Hardy Decl., ECF No. 30-1 at 4 ¶ 7; *see also* Def.'s Opp'n, ECF No. 30 at 14. Based on its review of the records, the FBI concluded that "[Congressman] Rohrabacher's privacy

interests outweighed [the] public interest in disclosure only for investigative records, should they exist, not previously disclosed or discussed [publicly] by [him]." Seidel Decl., ECF No. 24-1 at 9 ¶ 18. DOJ argues—and the Court agrees—that "[t]he privacy interests of parties mentioned in law enforcement files are 'substantial[.]'" Def.'s Opp'n, ECF No. 30 at 12 (quoting *SafeCard*, 926 F.2d at 1205); *see also Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008) ("A substantial privacy interest is anything greater than a *de minimis* privacy interest."). Indeed, the D.C. Circuit has consistently held that "individuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation." *Nation Magazine*, 71 F.3d at 894 (collecting cases).

The D.C. Circuit's decision in *CREW*, 746 F.3d at 1087—a FOIA case involving the FBI's investigative records of Tom DeLay, the former Majority Leader of the U.S. House of Representatives, arising from the activities of a former lobbyist—is instructive on this point. In that case, Mr. DeLay publicly announced that he had cooperated with the FBI's investigation into the Jack Abramoff scandal, that he had been under investigation, and that the Justice Department had decided not to pursue criminal charges against him. *Id*. at 1087, 1089,

1091-92. The D.C. Circuit determined that Mr. DeLay had "two potential privacy interests at stake": (1) "avoiding the stigma of having his name associated with a criminal investigation[,]" *id.* at 1091; and (2) "[a]lthough [Mr.] DeLay's action [*i.e.* his public statements] lessened his [privacy] interest in keeping secret the *fact* that he was under investigation, he retained a second, distinct privacy interest in the *contents* of the investigative files[,]" *id.* at 1092 (emphasis in original). In doing so, the D.C. Circuit found that the FBI's *Glomar* response was improper because of Mr. DeLay's public statements confirmed that he had been under investigation. *Id.* The D.C. Circuit, however, made clear that "[Mr.] DeLay's privacy interest in the contents of the investigative files [was] not insubstantial" even though he was a public official at the time. *Id.* For the same reasons, the Court therefore finds that Congressman Rohrabacher has a more than a *de minimis* privacy interest in the contents of any FBI investigative records. *See id.*

## 2. Public Interest

Having determined that Congressman Rohrabacher's privacy interest is not insubstantial, the Court next considers the "other side of the scale"-the public interest. *Id.* Plaintiffs bear the burden of establishing that disclosure will advance the public interest. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 158 (2004) ("[W]hen Exemption 7(C)'s privacy concerns

are present, the requester must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and that the information is likely to advance that interest."). As Judge Boasberg recognized in a case that resembles the FOIA request here, "it is critical to remember that '[t]he only relevant public interest' is 'the extent to which disclosure of the information sought would she[d] light on an <u>agency's</u> performance of its statutory duties or otherwise let citizens know what their government is up to.'" *Prop. of People*, 310 F. Supp. 3d at 69 (quoting *CREW*, 746 F.3d at 1093) (emphasis in original). "The inquiry is therefore not focused on any 'general public interest in the subject matter of the FOIA request'—*i.e.*, [Congressman Rohrabacher]." *Id*. (quoting *Schrecker*, 349 F.3d at 661).

*CREW*, again, is instructive. *See id*. There, the D.C. Circuit held that there was a "weighty" public interest in "shining a light on the FBI's investigation of major political corruption and the DOJ's ultimate decision not to prosecute a prominent member of the Congress for any involvement he may have had" in the Abramoff scandal. *CREW*, 746 F.3d at 1092-93. The D.C. Circuit concluded that "[d]isclosure of the records would likely reveal much about the diligence of the FBI's investigation and the DOJ's exercise of its prosecutorial discretion: whether the government had the evidence but

nevertheless *pulled its punches*" where the FBI's records related
to "a wide-ranging public corruption investigation as part of
[the FBI's] ongoing efforts to root out systemic corruption
within the highest levels of government." *Id*. at 1093 (emphasis
added). The D.C. Circuit made clear that the agency's
categorical withholding of *all* responsive records under
Exemption 7(C) was inappropriate given the significant public
interest at stake, and thus remanded the case for the district
court to "weigh what information may be withheld under Exemption
7(C) and whether any information [was] reasonably segregable and
[could] be disclosed." *Id*. at 1096.

In some respects, *CREW* is distinguishable from the present
action because the FBI in this case has not withheld *all*
responsive records under Exemption 7(C), and Plaintiffs seek
"[a]ny and all" records constituting, mentioning, or referring
to Congressman Rohrabacher in his capacity as a member of
Congress. Seidel Decl., ECF No. 24-1 at 3 ¶ 5. "It is important
to remember, however, that Plaintiffs are not requesting
information [in their FOIA request] about a particular
<u>investigation</u>." *Prop. of People*, 310 F. Supp. 3d at 69 (emphasis
in original) (citing *CREW*, 746 F.3d at 1092-95). "Rather, they
request records related to a particular <u>individual</u>." *Id*.
(emphasis in original). Plaintiffs attempt to show that there is
strong public interest through its FOIA request for

investigative records concerning Congressman Rohrabacher without presenting any evidence that Congressman Rohrabacher was under investigation—unlike in *CREW* where there was no question that Mr. DeLay was under investigation. *Compare* Pls.' Mot., ECF No. 26 at 13-17, *with CREW*, 746 F.3d at 1092. In fact, Plaintiffs make clear that Congressman Rohrabacher's name is *associated with* an investigation. Pls.' Mot., ECF No. 26 at 12 (stating "Mr. Rohrabacher disclosed his association with an FBI investigation"). Nevertheless, the Court cannot ignore the existence of news articles, of which the Court takes judicial notice, reporting that the SCO investigated a September 2016 meeting between Congressman Rohrabacher and one of the President's former National Security Advisors. *See, e.g.*, Julia Ainsley, *Mueller Probing Pre-Election Flynn Meeting With Pro-Russia Congressman*, NBC News (Nov. 10, 2017, 12:59 PM), https://www.nbcnews.com/news/us-news/mueller-probing-pre-election-flynn-meeting-pro-russia-congressman-n819676; Michael R. Blood, *Rouda Claims Historic Victory Over Republican Rohrabacher*, NBC4 (Nov. 10, 2018, 10:17 PM) (stating that Congressman Rohrabacher's "name has come up in the investigation into Russian meddling in the 2016 presidential election"), https://www.nbclosangeles.com/news/local/Rouda-Declares-Victory-in-House-Race-Against-Rohrabacher-500204551.html.

Over the course of this litigation, Plaintiffs have shifted

their focus to the SCO's investigation into Russia's influence in the 2016 presidential election and the FBI's counterintelligence efforts. *Compare* Compl., ECF No. 1 at 2 ¶¶ 9-10 (seeking the FBI's records referring to Congressman Rohrabacher and his contacts with the FBI), *with* Pls.' Reply, ECF No. 32 at 17 (asserting that "[t]he requested records may reveal the extent to which the FBI took seriously the threat of Russian interference in the United States' political system"). Indeed, as part of its search, the FBI contacted the SCO to locate any records associated with Congressman Rohrabacher's 2013 meeting with Mr. Manafort and Company A's lobbyist. Def.'s Opp'n, ECF No. 30 at 20. Plaintiffs rely on *CREW* to support their argument that the public interest is strong in this case and that the requested records will shed light on the FBI's investigation into potential foreign attempts to undermine the U.S. electoral process because "it is important for the public to understand not just what may have been said at the 2012 meeting, but also the FBI's overall diligence in handling what it perceived to be an attempt by Russian intelligence to influence a member of Congress." Pls.' Mot., ECF No. 26 at 15. Plaintiffs underscore the "criticisms that have been leveled against the FBI for not doing enough to stem the influence of Russian intelligence," *id.*, but they explain that highlighting those criticisms is "independent of whether the FBI's handling

[of the issue] was proper or not[,]" *id.* at 15 n.5. Plaintiffs remain focused on "how the FBI carried out its statutory duty to investigate counterintelligence matters." Pls.' Reply, ECF No. 32 at 16. And Plaintiffs ask this Court to "require the FBI to exclude from its *Glomar* response any records which link [Congressman] Rohrabacher to Russian counterintelligence matters[.]" *Id.* at 17.

DOJ attempts to distinguish *CREW* from this case. *See* Def.'s Opp'n, ECF No. 30 at 13. DOJ argues that the D.C. Circuit in *CREW* found "that [Mr.] Delay's privacy interest was clearly outweighed by the need to inform the public 'about the FBI's and the DOJ's investigation of [a] major, wide-ranging public corruption' scandal. Here, there is no allegation of corruption against the FBI or the Department of Justice." *Id.* (quoting *CREW*, 746 F.3d at 1096). Plaintiffs take issue with this distinction. *See* Pls.' Reply, ECF No. 32 at 16. Plaintiffs correctly point out that in *CREW* there were no allegations of corruption against the FBI or DOJ, and that the allegations of corruption related to a member of Congress. *Id.*; *see also CREW*, 746 F.3d at 1095 ("CREW alleges no impropriety on the part of the FBI or the DOJ.").

The D.C. Circuit has made clear that the public has an interest in knowing how the FBI investigated a sitting member of Congress. *CREW*, 746 F.3d at 1094-96. "'[M]atters of substantive

law enforcement policy . . . are properly the subject of public concern,' whether or not the policy in question is lawful." *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 14 (D.C. Cir. 2011) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 766 n.18 (1989)). In *Property of People v. United States Department of Justice*, Judge Boasberg refused to permit the FOIA requesters there—consisting of two of the same plaintiffs in this case—to "go on a fishing expedition for FBI records" because the plaintiffs gave "no reason to think that the FBI otherwise investigated [President Donald J. Trump], much less that it 'pulled its punches' on any occasion." 310 F. Supp. 3d at 70 (quoting *CREW*, 746 F.3d at 1093). Judge Boasberg found that there was no public interest "[w]ithout such a 'meaningful evidentiary showing[.]'" *Id.* (quoting *Favish*, 541 U.S. at 175). When "the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure." *Favish*, 541 U.S. at 174. And "courts must insist on a meaningful evidentiary showing." *Id.* at 175.

The *Favish* standard is inapplicable in this case. *See ACLU v. U.S. Dep't of Justice*, 655 F.3d at 14 (FOIA requester not required to show evidence of misconduct where it did not seek to show that a government "policy was legally improper, but rather

to show what that policy [was] and how effective or intrusive it [was]"). The *Favish* evidentiary production is not required when, as here, a "[p]laintiff does not argue that there was any negligence or misfeasance on the part of government officials in investigating or prosecuting [the officials]." *Showing Animals Respect & Kindness v. U.S. Dep't of Interior*, 730 F. Supp. 2d 180, 195 n.17 (D.D.C. 2010).

The Court is persuaded that Plaintiffs have demonstrated that there is a significant public interest in the requested records. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 840 F. Supp. 2d 226, 234 (D.D.C. 2012) ("[I]n these days of political turmoil, constant accusations and name calling, and concern about our economic and social future, there is, if anything, a heightened public interest in learning what the Government is 'up to.'" (quoting *ACLU v. U.S. Dep't of Justice*, 655 F.3d at 12)). Plaintiffs have given more than one "reason to think that the FBI otherwise investigated [Congressman Rohrabacher]," and that it 'pulled its punches'[.]" *Prop. of People*, 310 F. Supp. 3d at 70 (quoting *CREW*, 746 F.3d at 1093). As the briefing makes clear, Plaintiffs seek the FBI's records concerning Congressman Rohrabacher to discover "how the FBI handled the issue of threats posed by Russian intelligence to the U.S. political system[.]" Pls.' Mot., ECF No. 26 at 15 n.5. "Clearly, the American public has a right to know about the

manner in which its representatives are conducting themselves and whether the government agency responsible for investigating and, if warranted, prosecuting those representatives for alleged illegal conduct is doing its job." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 840 F. Supp. 2d 226, 234 (D.D.C. 2012).

### 3. Balancing the Competing Interests

The Court must balance the significant interests on both sides of the scale. "In some, perhaps many, instances where a third party asks if an agency has information regarding a named individual in its law enforcement files, the cognizable public interest in that information will be negligible; the requester will be seeking records about a private citizen, not agency conduct." *Nation Magazine*, 71 F.3d at 895. "In this case, however, [Plaintiffs] have identified a public interest cognizable under FOIA in disclosure of any information regarding [Congressman Rohrabacher] that might exist in [the FBI's] investigatory files." *Id*. Given that the FBI has neither confirmed nor denied the existence of investigative records beyond the three categories that have already been publicly acknowledged, "a more particularized approach is required." *Id*. In *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 846 F. Supp. 2d 63, 76 (D.D.C. 2012), the court concluded that it "simply [was] not able to come to a

conclusion as to the balance between the privacy and public interests at [the] level of generality" in that case. There, the court granted the plaintiff's partial motion for summary judgment and ordered the agency to submit a *Vaughn* index that identified each document or group of documents that it sought to withhold and "a relatively detailed justification" for its withholdings. *Id.* (quoting *Mead Data Central, Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).[9] The court made clear that it did "not decide whether the Government need turn over anything at all in response to [the plaintiff's FOIA] request." *Id.*

Here, "[t]he Court expresses no view as to whether the FBI may legitimately assert a partial *Glomar* response to some aspects of [Plaintiffs'] request, perhaps even to entire categories of [Plaintiffs'] request." *Elec. Frontier Found. v. Dep't of Justice*, 384 F. Supp. 3d 1, 13 (D.D.C. 2019). That being said, "[o]nce an agency acknowledges that it has some responsive documents, there are a variety of forms that subsequent filings in the district court may take. A pure 'no number, no list' response is at one end of that continuum; a

---

[9] "A *Vaughn* index describes the documents withheld or redacted and the FOIA exemptions invoked, and explains why each exemption applies." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1145 n.1 (D.C. Cir. 2015) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987)).

traditional *Vaughn* index is at the other." *ACLU v. CIA*, 710 F.3d

at 433. At this juncture, the Court cannot balance the competing

interests at this level of generality. *See Citizens for*

*Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 846

F. Supp. 2d at 76. The Court therefore directs DOJ to submit a

*Vaughn* index and prescribes the following format for the *Vaughn*

index:

> [A]ny supplemental *Vaughn* index [must] include
> a separate numbered entry for each document,
> including for each email (or email chain) and
> for each email attachment (which shall be
> separately listed in consecutive order after
> its associated email): (1) a document number;
> (2) an index identification number (*i.e.*, a
> Bates stamp number); (3) the document's
> subject or title; (4) its date; (5) the author
> and the author's job title; (6) the recipient
> and the recipient's job title; (7) the total
> number of pages; (8) the disposition (whether
> it is entirely or partially withheld); (9) the
> reason for being withheld; (10) the statutory
> authority for the withholding; and (11) the
> number of pages with redacted, withheld
> information.

*Ctr. for Biological Diversity v. EPA*, 279 F. Supp. 3d 121, 145

(D.D.C. 2017). The FBI "need not disclose the names and

addresses redacted from the documents[,]" *SafeCard*, 926 F.2d at

1206, but "documents simply assessing, for example, whether or

not to seek an indictment may not be covered by Exemptions 6 or

7(C)[,]" *Citizens for Responsibility & Ethics in Wash. v. U.S.*

*Dep't of Justice*, 846 F. Supp. 2d at 76. Accordingly, the Court

**DENIES IN PART** DOJ's motion for summary judgment and **HOLDS IN**

32

**ABEYANCE** Plaintiffs' motion for summary judgment.[10]

## B. Adequacy of the Search

The Court next considers whether the FBI conducted an adequate search. To prevail at the summary judgment stage, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was *adequate*." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original). "The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Id*. (citation omitted). To meet its burden, an agency may provide "a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313-14 (D.C. Cir. 2003) (citation and internal quotation marks omitted). "If, however, the record leaves substantial doubt as to the

---

[10] The Court **DEFERS** its ruling on segregability until after DOJ submits it supplemental declarations and *Vaughn* index.

sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

To demonstrate the adequacy of the search, DOJ submits two declarations. The first declarant avers that the FBI searched its databases—CRS, UNI, and Sentinel—using various search terms and that those databases contain the records of the FBI's entire organization, including the FBI headquarters, field offices, and the Legal Attaché offices. Seidel Decl., ECF No. 24-1 at 12-19 ¶¶ 25-37. As part of the search, the FBI contacted certain offices to locate records, including the Office of Congressional Affairs, the Office of the Executive Secretariat, the Washington Field Office, and the SCO. *Id.* at 17-19 ¶¶ 34-37. Based on its "practice to use the date [the FBI] initially conducts searches for the request as the search cut-off date[,]" the FBI used a cutoff date of June 15, 2017. Hardy Decl., ECF No. 30-1 at 8 n.4. The FBI did not search any other individuals or offices, arguing that the its "RIDS is in a better position to know what custodians are likely to hold potentially responsive records." Def.'s Opp'n, ECF No. 30 at 18. DOJ contends that "FOIA does not require agencies to conduct exhaustive searches of every database, individual, or office a requestor can name or suggest." *Id.*

Plaintiffs challenge the adequacy of the FBI's search on numerous grounds. Plaintiffs argue that the FBI failed to conduct a reasonable search of all offices likely to possess responsive documents. Pls.' Mot., ECF No. 26 at 17. Plaintiffs assert—and DOJ does not dispute—that the FBI did not search for records within the Counterintelligence Division and the Office of General Counsel. *Id.* at 17-18, 26. Neither did the FBI search for records from certain custodians—the Special Agent in Charge of Washington Field Office, the Assistant Director of the Counterintelligence Division, and the Assistant Director of the Office of Congressional Affairs. Pls.' Mot., ECF No. 26 at 18-19, 22. Finally, Plaintiffs take issue with the cutoff date because the FBI failed to inform Plaintiffs of that date. Pls.' Reply, ECF No. 32 at 23. The Court will examine each argument.

### 1. The FBI's Temporal Limitation Was Unreasonable

An agency's decision to impose temporal limitations in responding to a FOIA request "is only valid when the limitation is consistent with the agency's duty to take *reasonable* steps to ferret out requested documents." *McGehee v. CIA*, 697 F.2d 1095, 1101 (D.C. Cir. 1983) (emphasis in original). Indeed, the D.C. Circuit has cautioned against a "reflexive application of the cut-off policy to every request regardless of circumstance" and has "expressly rejected the proposition that under FOIA, the 'use of a time-of-request cut-off date is always reasonable.'"

*Public Citizen v. Dep't of State*, 276 F.3d 634, 644 (D.C. Cir. 2002) (quoting *McGehee*, 697 F.2d at 1102). Even so, "specific circumstances in some agencies may render an across-the-board rule reasonable" so long as the agency makes a "showing that warrants such an approach in its case." *Id*. The D.C. Circuit made clear that "[i]t would be extremely difficult for the [the agency] to convince us that it may 'reasonably' use *any* cut-off date without so informing the requester" because "[s]uch notification would involve an insignificant expenditure of time and effort on the part of the agency." *McGehee*, 697 F.2d at 1105 (emphasis in original). Prior notification of the cut-off date "would enable the [FOIA] requester to submit supplementary demands for information if [the requester] felt so inclined." *Id*.

Here, the FBI's "*unpublicized* temporal limitation of its searches" was improper. *Id*. (emphasis in original). It is undisputed that the FBI failed notify Plaintiffs of the July 15, 2017 cutoff date until it filed its memorandum in opposition to Plaintiffs' cross-motion for summary judgment and reply memorandum in support of its renewed motion for summary judgment. *See, e.g.*, Def.'s Opp'n, ECF No. 30 at 20; Hardy Decl., ECF No. 30-1 at 8 ¶ 15 n.4; Pls.' Reply, ECF No. 32 at 24. Plaintiffs did not have an opportunity to submit any supplemental demands for information before submitting their

reply brief. The FBI did not communicate the cutoff date during its negotiations with Plaintiffs, provide a justification to Plaintiffs, or afford Plaintiffs with an opportunity to object to the cutoff date at the early stages of the litigation. *See* Pls.' Reply, ECF No. 32 at 24. The Court expresses no view on the propriety of the FBI's practice of employing cutoff dates, *see* Hardy Decl., ECF No. 30-1 at 8 ¶ 15 n.4, but the FBI's failure to give Plaintiffs advance notice of the cutoff date was inconsistent with D.C. Circuit precedent. *See Public Citizen*, 276 F.3d at 643-44 (invalidating agency's cut-off date policy because it permitted the agency to "withhold, with little or no justification, a potentially large number of relevant documents"). The Court therefore finds that the FBI's temporal limitation of its searches was improper.

### 2. **The FBI Improperly Limited Its Searches**

To allow a district court to determine whether the search was adequate, the affidavit should include the agency's "rationale for searching certain locations and not others." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 92 (D.D.C. 2009). Factual assertions in such an affidavit will be accepted as true *unless* the requesting party submits evidence contradicting those assertions or rebutting the presumption that the agency's search was made in good faith. *Coffey v. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1, 7 (D.D.C. 2017) (Sullivan, J.).

### i. Counterintelligence Office

Plaintiffs offer a factual basis to support their contention that there was a reasonable likelihood that other offices would possess responsive records. According to Plaintiffs, "[t]he FBI's Counterintelligence Division is responsible for, among other things, [c]ounter[ing] the activities of foreign spies." Pls.' SOMF, ECF No. 26-1 at 3 ¶ 8 (citation and internal quotation marks omitted).[11] The Counterintelligence Division's counterespionage section documents interviews of non-subjects. *Id.* at 3 ¶ 9. Plaintiffs argue that the FBI should have searched for responsive records in the Counterintelligence Division because Congressman Rohrabacher publicly confirmed that the FBI warned him that Russian spies were trying to recruit him. Pls.' Mot., ECF No. 26 at 17. DOJ does not explain the legal basis for the FBI's decision not to search for records in the Counterintelligence Division. *See* Def.'s Opp'n, ECF No. 30 at 17. Rather, DOJ responds that the FBI "determined the field office responsible

---

[11] DOJ concedes Plaintiffs' Statement of Material Facts by failing to challenge it. *See Cruz v. Am. Airlines*, 150 F. Supp. 2d 103, 115 n.8 (D.D.C. 2001) (finding that opposing party conceded moving party's statement of facts by not challenging the statement), *aff'd sub nom. Cruz v. Am. Airlines, Inc.*, 356 F.3d 320 (D.C. Cir. 2004); *see also* LCvR 7(h)(1) ("[T]he Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

for the region where the meeting would have taken place was the more likely custodian than the Headquarters ('HQ') Counterintelligence Division." *Id.* (citing Hardy Decl., ECF No. 30-1 at 6 ¶ 11). Both declarations provide the same language without an explanation for why the FBI did not conduct a search of the Counterintelligence Division. *See* Seidel Decl., ECF No. 24-1 at 19 ¶ 39; *see also* Hardy Decl., ECF No. 30-1 at 6 ¶ 11.

While the first declaration identifies the databases and locations searched, *see* Seidel Decl., ECF No. 24-1 at 12-19 ¶¶ 25-37, it does not provide the required "averment that all locations likely to contain responsive records were searched," *Powell v. IRS*, 280 F. Supp. 3d 155, 162 (D.D.C. 2017); *see also Oglesby*, 920 F.2d at 68. Instead, the first declaration avers that the agency "contact[ed] the FBI components *likely* to maintain or have knowledge as to the location of responsive records[.]" Seidel Decl., ECF No. 24-1 at 41 ¶ 83 (emphasis added). The FBI's averment, however, will not pass muster because searching the locations "most likely to contain responsive documents . . . is not the relevant metric." *DiBacco v. U.S. Army*, 795 F.3d 178, 190 (D.C. Cir. 2015) (citation and internal quotation marks omitted); *see also Mobley v. CIA*, 806 F.3d 568, 582 (D.C. Cir. 2015) ("Had the FBI only searched the record systems 'most likely' to contain responsive records, its search would be inadequate."). The Court therefore finds that

the FBI's declarations fail to provide this Court with
sufficient information to conclude that the FBI's search was
"reasonably calculated to uncover all relevant documents."
*Truitt*, 897 F.2d at 542 (citation omitted).

### ii.    Office of General Counsel

Plaintiffs argue that the FBI's search should have covered
the Office of General Counsel because an older version of the
FBI's policy states that the Office of General Counsel "responds
to Congressional requests for FBI documents." Pls.' Mot., ECF
No. 26 at 26 (citation omitted). The first declarant avers that
the FBI contacted the Office of General Counsel and that office
informed the agency that "staff in [the Office of General
Counsel] will review documents prepared to be sent to Congress
prior to their release, but all correspondence between Congress
and the FBI is routed through [the Office of Congressional
Affairs] and records of this correspondence is maintained by
[the Office of the Executive Secretariat]." Seidel Decl., ECF
No. 24-1 at 20 ¶ 41. The second declarant states that "all
correspondence between Congress and the FBI is routed through
[the Office of Congressional Affairs]" and that the FBI's search
of the Office of Congressional Affairs "would have located any
records handled by [the Office of General Counsel] and the
search is both adequate and reasonable." Hardy Decl., ECF No.
30-1 at 8 ¶ 16.

Although the FBI points out that Plaintiffs rely on an outdated version of the FBI's policy regarding the Office of General Counsel's involvement in Congressional inquiries, the current version states that the Office of General Counsel "assists [the Office of Congressional Affairs] in responding to Congressional inquiries, including Congressional requests for FBI documents." Hardy Decl., ECF No. 30-1 at 9 ¶ 16. DOJ argues that the Office of Congressional Affairs is the primary office, and Plaintiffs' suggestion that the Office of General Counsel would have responsive documents is speculative. Def.'s Opp'n, ECF No. 30 at 21. DOJ contends that the FBI did not find any evidence that the Office of General Counsel created any records within the released documents. *Id.*

The FBI's own policy undercuts DOJ's arguments. Plaintiffs correctly point out—and DOJ does not contest—that the older version of the FBI's policy clearly states that the Office of General Counsel responded to Congressional requests for FBI documents. Pls.' Reply, ECF No. 32 at 25. Because Congressman Rohrabacher began his service in the House in 1989, it is reasonable to expect that the Office of General Counsel would have responded to requests from Congressman Rohrabacher under the older version of the FBI's policy. *See id*. at 25-26. DOJ does not argue—and the FBI's declarations do not aver—that the

Office of General Counsel would have no responsive records. *See* Def.'s Opp'n, ECF No. 30 at 20-22. The Court therefore finds that the FBI's search was not "reasonably calculated to uncover all relevant documents." *Truitt*, 897 F.2d at 542 (citation omitted).

### iii.    Remaining Issues

Having found that the FBI's declarations do not provide a rationale for the FBI's failure to search for responsive records in the Office of General Counsel and Counterintelligence Division, the Court turns to Plaintiffs' remaining issues with the FBI's search. Plaintiffs argue that the FBI's refusal to search the Washington Field Office's files, including e-mail accounts, beyond the records located in the CRS is unreasonable. The FBI's second declarant avers that the FBI "determined the individuals likely to possess and/or be cognizant of possible responsive records would be those actually tasked to investigate the allegations implicated by the potential records at issue – the individuals at [the Washington Field Office] assigned to investigate Russian counterintelligence operations in the Washington metropolitan area." Hardy Decl., ECF No. 30-1 at 6 ¶ 11. The declarant also states that the FBI contacted individuals at the Washington Field Office who were "likely to have knowledge of potentially responsive records," but the FBI specified that it was seeking to find records related to

Congressman Rohrabacher's 2012 meeting with the FBI. *Id*. at 7 ¶ 14.

DOJ argues that any investigative files held by those individuals in the Washington Field Office will be contained in CRS; thus, additional searches will be duplicative. Def.'s Opp'n, ECF No. 30 at 19. DOJ's position fails, however, because the FBI's declarations do not explain how the individuals in the Washington Field Office who were assigned to investigate Russian counterintelligence operations would not have responsive records in their e-mail accounts. *Cf. McClanahan v. U.S. Dep't of Justice*, 204 F. Supp. 3d 30, 44-45 (D.D.C. 2016) (finding that the FBI reasonably set the scope of the search where it searched CRS and conducted searches of e-mail accounts and located additional responsive documents), *aff'd sub nom*. *McClanahan v. Dep't of Justice*, 712 F. App'x 6 (D.C. Cir. 2018).

Next, Plaintiffs argue that the FBI inadequately described the searches of the SCO and the Office of the Executive Secretariat. Pls.' Mot., ECF No. 26 at 22-25; *see also* Pls.' Reply, ECF No. 32 at 21, 26. With regard to the Office of the Executive Secretariat, Plaintiffs challenge the FBI's description of that office's "own internal database." Pls.' Reply, ECF No. 32 at 26 (quoting Hardy Decl., ECF No. 30-1 at 10 ¶ 17). Plaintiffs contend that the text and index searches within that database fail to account for variations of

Congressman Rohrabacher's name because both searches of the "To" and "From" fields included the words "Rohrabacher" and "Rohrabacher, Dana." *Id.* at 26-27. Plaintiffs argue that the declarant does not provide three pieces of information: (1) whether the Office of the Executive Secretariat maintains any other databases; (2) whether "this particular database would be the only one likely to contain responsive records"; and (3) whether there are any paper copies of correspondence given that Congressman Rohrabacher's service began in 1989. *Id.* at 26. Defendants maintain that the searches of the "internal database" were adequate because those searches located 273 pages of potentially responsive documents. Def.'s Opp'n, ECF No. 30 at 22.

The Court agrees with Plaintiffs' arguments that the declarations do not provide an adequate description of the Office of the Executive Secretariat's search. Neither declarant indicates whether the Office of the Executive Secretariat searched its paper records. *See Armstrong v. Executive Office of the President*, 830 F. Supp. 19, 23-24 (D.D.C. 1993) (holding that agency's search was unreasonable because it produced only electronic documents and withheld paper versions of otherwise responsive documents). Nor do they confirm whether the internal database identified was the only one. Unlike the search terms for the CRS search that provide variations of Congressman

44

Rohrabacher's name, *see* Seidel Decl., ECF No. 24-1 at 17-18 ¶ 35, the description of the Office of the Executive Secretariat's search does not include any variations of Congressman Rohrabacher's name, *see* Hardy Decl., ECF No. 30-1 at 10 ¶ 17. Because the declarations do not indicate that the FBI "search[ed] for other permutations of the name, . . . the search was not reasonably calculated to turn up all responsive files." *Negley v. FBI*, 658 F. Supp. 2d 50, 60-61 (D.D.C. 2009).

As to the SCO's search, Plaintiffs argue that the declarations provide inadequate descriptions of the search, and that the Hardy declaration does not cure the deficiencies in the Seidel declaration. Pls.' Reply, ECF No. 32 at 21. The Seidel declaration avers that it "contacted FBI personnel at SCO to confirm if any records could be located relating to the meeting with [Mr.] Manafort disclosed in [Mr.] Gates' Statement of Offense, and no records within the scope of Plaintiffs request were located." Seidel Decl., ECF No. 24-1 at 19 ¶ 37. The Hardy declaration avers that certain personnel, known as "subject-matter-experts," "within the SCO located the appropriate investigative case files, and conducted searches of [those] files. They were unable to locate any responsive records pertaining to the former Congressman or the meeting in question in [Mr.] Gates' Statement of Offense." Hardy Decl., ECF No. 30-1 at 8 ¶ 15. Plaintiffs challenge those descriptions, arguing:

(1) the SCO fails to explain how it determine which files were "appropriate investigative files"; (2) the SCO does not explain how it "conducted searches of [those] files"; and (3) whether the "investigative case files" are the only locations in the SCO to likely contain responsive records. Pls.' Reply, ECF No. 32 at 21. Plaintiffs rely on *Reporters Committee for Freedom of Press v. FBI*, 877 F.3d 399, 404 (D.C. Cir. 2017), which is instructive.

In that case, the D.C. Circuit made clear that agency affidavits must "set[ ] forth the search terms and the type of search performed with the specificity [this Circuit's] precedent requires." *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d at 403 (citation and internal quotation marks omitted). The D.C. Circuit recognized that "[t]his [C]ircuit's precedent has long made clear that an affidavit containing 'no information about the search strategies of the [agency] components charged with responding to [a] FOIA request' and providing no 'indication of what each [component's] search specifically yielded' is inadequate to carry the government's summary-judgment burden." *Id.* (quoting *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007)).

DOJ's descriptions of the SCO's search fall short of this standard. *See id.* at 403; *see also Oglesby*, 920 F.2d at 68. To support its position that the search was adequate, DOJ repeats

the statement in the Hardy declaration: "The [subject-matter-experts] within the SCO located the appropriate investigative case files, and conducted searches of these files. They were unable to locate any responsive records pertaining to the former Congressman or the meeting in question in [Mr.] Gates' Statement of Offense." Def.'s Opp'n, ECF No. 30 at 20 (quoting Hardy Decl., ECF No. 30-1 at 8 ¶ 15). Neither DOJ nor the FBI explain how the SCO's search was conducted. Furthermore, DOJ does not provide an explanation for the footnote in the Hardy declaration regarding the June 15, 2017 cutoff date in connection with the SCO's search. *See id*. Instead, DOJ reiterates the statement in the Hardy declaration: "The SCO was appointed by Deputy Attorney General Rosenstein on May 17, 2017, leaving less than a month of overlap between [Plaintiffs'] request and the existence of [the] SCO." *Id*. (quoting Hardy Decl., ECF No. 30-1 at 8 ¶ 15 n.4). The Court cannot determine whether the SCO's search was adequate based on the declarations. "Accordingly, consistent with this Circuit's precedent, [the FBI] shall identify the search terms that the staff members in [the various] offices used to search their electronic records, as well as the reason for any differences in the record systems they searched." *Trautman v. Dep't of Justice*, 317 F. Supp. 3d 405, 413 (D.D.C. 2018) (citing *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d at 403). The FBI "shall also clarify how staff members searched their

desks, file cabinets, file drawers and file rooms for nonelectronic records." *Id*.

*   *   *

Accordingly, the Court **DENIES** DOJ's motion for summary judgment and **HOLDS IN ABEYANCE** Plaintiffs' cross-motion for summary judgment as to the adequacy of the searches. The FBI must either: (1) conduct a new search (or searches) for the requested records to ensure the adequacy of the search consistent with this Circuit's precedent; or (2) provide the Court with declarations from which the Court can find that the declarants have personal knowledge that the search methodology, procedures, and searches actually conducted were reasonably designed to locate documents responsive to Plaintiffs' request consistent with this Opinion. *McKinley v. FDIC*, 756 F. Supp. 2d 105, 113 (D.D.C. 2010) (Sullivan, J.).[12]

---

[12] "Because the case will proceed, the Court may reserve judgment on [the] remaining issues for another day, in the event they remain disputed." *Bartko v. U.S. Dep't of Justice*, 62 F. Supp. 3d 134, 141 (D.D.C. 2014). Given that the parties may resolve the remaining issues after the FBI conducts searches consistent with this Opinion, the Court therefore reserves judgment on Plaintiffs' remaining arguments: (1) that the FBI's search was inadequate for its refusal to contact the Special Agent in Charge, the Assistant Director of Counterintelligence, or the Assistant Director of the Office of Congressional Affairs, *see* Pls.' Mot., ECF No. 26 at 19; and (2) that the FBI improperly redacted information on Bates-stamped pages 15, 175, 185, 186, 190, 197, and 221 because the "official acknowledgment" doctrine bars the FBI from withholding such information because it has been previously released in other documents, *see id*. at 27-30.

### C. Evidentiary Objections

The Court now turns to Plaintiffs' evidentiary objections to the FBI's declarations. Plaintiffs argue that the declarations fail to attest to the declarants' familiarity with the documents at issue, and that this Court should reject the declarations because they contain hearsay. Pls.' Mot., ECF No. 26 at 6; *see also* Pls.' Reply, ECF No. 32 at 5–8. For the reasons explained below, the Court cannot agree with Plaintiffs' arguments.

Under Rule 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "A declarant in a FOIA case satisfies the personal knowledge requirement in [Rule 56(c)(4)] if in his declaration, [he] attests to his personal knowledge of the procedures used in handling [a FOIA] request and his familiarity with the documents in question." *Barnard v. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) (citation and internal quotation marks omitted). And "[b]ecause a declarant is deemed to have personal knowledge if he has a general familiarity with the responsive records and procedures used to identify those records, the declarant is not required to independently verify the information contained in each

responsive record[.]" *Id.* at 138-39.

The Seidel declaration provides that "[t]he statements contained in this declaration are *based upon my personal knowledge*, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith." Seidel Decl., ECF No. 24-1 at 2 ¶ 2 (emphasis added). The Hardy declaration contains an identical statement. Hardy Decl., ECF No. 30-1 at 2 ¶ 3. Both declarants aver that they are "*familiar* with the procedures followed by the FBI in responding to requests for information from its files" and that they are "*aware* of the FBI's response to Plaintiffs' FOIA request for records relating to Congressman Dana Rohrabacher." Seidel Decl., ECF No. 24-1 at 2 ¶ 3 (emphasis added); *see also* Hardy Decl., ECF No. 30-1 at 2 ¶ 3. In response to Plaintiffs' objections, the Hardy declaration explains:

> [A]s part of our daily duties, Mr. Seidel and
> I supervise all stages of the [FOIA] request
> process    including    initial    receipt    and
> handling, the search for responsive records,
> and the processing of those records pursuant
> to  the  FOIA  .  .  .  .  This  includes  all
> information  submitted  in  consultation  with
> [other  government  agencies].  All  withholdings
> submitted  by  [other  government  agencies]  are
> reviewed  by  the  FBI  staff  Mr.  Seidel  and  I
> supervise.  Additionally,  beyond  supervision,
> when  preparing  declarations  to  justify  the
> FBI's  actions  for  [FOIA]  litigations,  Mr.
> Seidel  and  I  are  fully  briefed  by  our  staff  on
> the  handling  of  the  requests  subject  to
> litigation  and  attest  to  the  actions  of  our
> staff.

Hardy Decl., ECF No. 30-1 at 3 ¶ 5. According to DOJ, that statement satisfies the FOIA requirements and accurately reflects the FBI's process for the records. Def.'s Opp'n, ECF No. 30 at 6. As Plaintiffs correctly point out, neither declarant explicitly uses the phrase "familiarity with the documents in questions." Pls.' Reply, ECF No. 32 at 5. Without that language, Plaintiffs contend that the declarants have not attested to being "familiar with *the contents of the responsive documents*." *Id*. at 6 (emphasis in original). Plaintiffs argue that "the FBI offers no support for the proposition that an affiant may testify to the contents of the documents without having ever looked at them." *Id*. at 7. To support their position, Plaintiffs rely on *Harris v. Gonzales*, 488 F.3d 442, 446 (D.C. Cir. 2007).

As recognized in *Harris*, the D.C. Circuit has "expressly held that affidavits based upon belief are inadequate to support a motion for summary judgment." 488 F.3d at 446 (citing *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981)). In *Harris*, the D.C. Circuit determined that the statements in two affidavits—"[t]o the best of [the affiant's] knowledge and belief, [the affiant] recall[ed] seeing an EEO poster displayed"—left the Circuit "wondering whether the affiants actually saw" the documents at issue there. *Id*. The D.C. Circuit

made clear that affidavits based merely on information and belief cannot satisfy the requirements under Rule 56. *Id*. Here, the declarants do not state that their statements were based on "information and belief." *See* Seidel Decl., ECF No. 24-1 at 2 ¶ 2; *see also* Hardy Decl., ECF No. 30-1 at 2 ¶ 3. Nonetheless, Plaintiffs argue that "[t]here is no meaningful difference between statements based on 'information provided' to the affiant . . . and statements based on the 'information and belief' of the affiant." Pls.' Reply, ECF No. 32 at 7 (citations omitted). The Court disagrees.

Faced with the same issue, the court in *Wisdom v. United States Trustee Program,* 232 F. Supp. 3d 97, 116 (D.D.C. 2017) upheld the exact language in the Seidel and Hardy declarations as to personal knowledge and declined to strike the affidavits as deficient. There, the affiant attested that he was responsible for "for agency compliance with [FOIA]" and had "direct involvement in the processing of responses to requests for access to [USTP] records and information." *Id*. at 115. The affiant also explained that his statements were "based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith." *Id*. The court interpreted those statements that the affiant "based his conclusions on information provided to him by other agency

employees and his own review of agency records." *Id*. The court explained: "While the [affidavit] might have provided this necessary information in a more direct and clear manner—*e.g.*, by using the tried-and-true recitation of a 'familiarity with the documents in question'—the language he has used nonetheless presents a sufficient approximation to satisfy Rule 56's requirements here." *Id*. at 115-16. For the same reasons, the Court therefore finds that the Seidel and Hardy declarations meet the requirements under Rule 56. *See id.*; *see also Wisdom v. U.S. Tr. Program*, 266 F. Supp. 3d 93, 103 (D.D.C. 2017) (rejecting FOIA requester's argument that agency declaration was deficient for using "upon information provided" language).

Plaintiffs' other argument—that this Court should not consider the declarations because they contain hearsay—is unavailing. In FOIA cases, courts in this jurisdiction have held that declarants may rely on "information they have obtained in the course of their official duties." *Canning v. U.S. Dep't of State*, 134 F. Supp. 3d 490, 510 (D.D.C. 2015) (citations omitted). "[T]here is no requirement that the declarant must have been personally involved in each of the challenged searches." *Wisdom*, 266 F. Supp. 3d at 102; *see also Shapiro v. U.S. Dep't of Justice*, 37 F. Supp. 3d 7, 20 (D.D.C. 2014) ("[D]eclarations that contain hearsay in recounting searches for documents are generally acceptable."). The Court therefore finds

that it may consider the FBI's declarations over Plaintiffs' objections. Accordingly, the Court **DENIES** Plaintiffs' cross-motion for summary judgment as to the evidentiary objections to the declarations.

## IV.   Conclusion

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Renewed Motion for Summary Judgment and **GRANTS IN PART, DENIES IN PART,** and **HOLDS IN ABEYANCE IN PART** Plaintiffs' Cross-Motion for Summary Judgment. Within thirty days of issuance of this Memorandum Opinion, DOJ shall submit an amended declaration or declarations as to the adequacy of the FBI's searches. Within sixty days of issuance of this Memorandum Opinion, DOJ shall submit: (1) a *Vaughn* index that identifies each document or group of documents for its withholdings under Exemptions 6 and 7(C); and (2) an amended declaration that addresses the balance between the privacy and public interests in light of the FBI's partial *Glomar* response. The Court **DEFERS** ruling on the issues of segregability and the applicability of the "official acknowledgement" doctrine with respect to the redactions in Bates-stamped pages 15, 175, 185, 186, 190, 197, and 221. A separate Order accompanies this Memorandum Opinion.

SO ORDERED.

Signed:     Emmet G. Sullivan
            United States District Judge
            September 24, 2019