**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PROPERTY OF THE PEOPLE, INC.,
*et al.*

              Plaintiffs,

  v.

DEPARTMENT OF JUSTICE,

              Defendant.

No. 17-cv-1728 (EGS)

<u>**MEMORANDUM OPINION**</u>

Plaintiffs Property of the People, Inc., a non-profit organization, and its founder, Ryan Noah Shapiro, filed suit against the U.S. Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking records from the Federal Bureau of Investigation ("FBI")[1] concerning its investigative and non-investigative files of a former congressperson, Dana Rohrabacher of California. *See* Am. Compl., ECF No. 5.[2] In response to the FOIA request, the FBI issued a partial *Glomar* response, refusing to confirm or deny the

---

[1] The FBI is a component of the United States Department of Justice ("DOJ"). *See Prop. of the People, Inc. v. Dep't of Justice*, 405 F. Supp. 3d 99, 106 (D.D.C. 2019).

[2] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

existence of certain records,[3] but confirming that records
existed for three categories: (1) "records reflecting
communications between it and the Congressman in the performance
of his official duties," Def.'s Opp'n, ECF No. 30 at 8; (2)
records relating to communications between the congressperson
and the FBI concerning a 2012 meeting, *id.* at 8-9; and (3)
"records related to the statement of offense in the [Richard W.]
Gates prosecution that [Paul J.] Manafort[, Jr.] and a lobbyist
for 'Company A' had met with a 'member of Congress,'" *id.* at 9;
*see also Prop. of the People, Inc. v. Dep't of Justice*, 405 F.
Supp. 3d 99, 109 (D.D.C. 2019).

The parties filed cross-motions for summary judgment
raising, among other issues, whether the partial *Glomar* response
was proper. *Prop. of the People, Inc.*, 405 F. Supp. 3d at 110.
On September 24, 2019, the Court ruled on the parties' cross-
motions for summary judgment. As is relevant here, with regard
to the partial *Glomar* response, the Court determined that it

---

[3] In FOIA parlance, the *Glomar* response is a disclaimer that
neither confirms nor denies the existence of records. *Bartko v.
U.S. Dep't of Justice*, 898 F.3d 51, 63 n.1 (D.C. Cir. 2018).
"The response is named for the *Hughes Glomar Explorer*, a ship
used in a classified Central Intelligence Agency project 'to
raise a sunken Soviet submarine from the floor of the Pacific
Ocean to recover the missiles, codes, and communications
equipment onboard for analysis by United States military and
intelligence experts.'" *Roth v. U.S. Dep't of Justice*, 642 F.3d
1161, 1171 (D.C. Cir. 2011) (quoting *Phillippi v. CIA*, 655 F.2d
1325, 1327 (D.C. Cir. 1981)).

could not come to a conclusion on the issue due to the record's "level of generality," and therefore denied in part DOJ's motion for summary judgment and held in abeyance Plaintiffs' cross-motion for summary judgment. *Id.* at 118. The Court then directed DOJ to submit a *Vaughn* index and an amended declaration that addressed the balance between the privacy and public interests in light of the FBI's partial *Glomar* response. Following the Court's decision, the parties filed a joint motion for a ruling on the *Glomar* issue on the present record, which the Court granted. *See* Min. Order (Jan. 30, 2020).

Now pending before the Court is the portion of Plaintiffs' motion for summary judgment that the Court had held in abeyance. Upon careful consideration of the parties' submissions, the applicable law, and the entire record, the Court **DENIES** Plaintiffs' motion for summary judgment regarding the *Glomar* issue.

## I. Background

The full background of this case is set out in *Property of the People, Inc. v. Department of Justice*, 405 F. Supp. 3d 99 (D.D.C. 2019); therefore, the Court provides a brief summary of the relevant facts below.

On May 19, 2017, the New York Times published an article stating that, in 2012, the FBI warned former Congressman Rohrabacher that Russian spies were attempting to recruit him as

an "agent of influence." Pls.' Ex. 1, ECF No. 26-3 at 3; *see also* Pls.' Statement of Material Facts ("Pls.' SOMF"), ECF No. 26-1 at 1 ¶ 1. In an interview for the article, Congressman Rohrabacher confirmed that the FBI met with him and that the "meeting had focused on his contact with one member of the Russian Foreign Ministry, whom he recalled meeting on a trip to Moscow." Pls.' SOMF, ECF No. 26-1 at 1 ¶ 1. The article includes a quote from Congressman Rohrabacher, stating that the FBI agents "were telling [him that] he had something to do with some kind of Russian intelligence" and one of the agents told him that "Moscow 'looked at [him] as someone who could be influenced.'" *Id.* at 1 ¶ 2.

On May 20, 2017, Plaintiffs submitted a FOIA request to the FBI, seeking "[a]ny and all records constituting, mentioning, or referring to the living person Dana Tyrone Rohrabacher . . . . This request is intended to include both investigative and non-investigative files (e.g. correspondence to or from Rep. Rohrabacher in his capacity as a member of Congress)." Ex. A, Decl. of Michael G. Seidel ("Seidel Decl."), ECF No. 24-1 at 45 (emphasis omitted). Plaintiffs claimed that Congressman Rohrabacher "is known for his friendship with Vladimir Putin and defense of Russia" and asserted that he waived his privacy interests because he had publicly disclosed the 2012 meeting with the FBI. Pls.' SOMF, ECF No. 26-1 at 1 ¶ 1; *see also* Seidel

4

Decl., ECF No. 24-1 at 46. Upon receipt of the FOIA request, the FBI declined to confirm or deny the existence of any investigative records—in FOIA terms, a *Glomar* response—to protect the privacy rights of third parties. Def.'s Statement of Material Facts ("Def.'s SOMF"), ECF No. 24 at 6 ¶¶ 13-15. In its *Glomar* response, the FBI advised Plaintiffs that it could not confirm or deny the existence of any other records pertaining to Congressman Rohrabacher unless one of three conditions were met: "(1) the requester provides a notarized authorization (privacy waiver) from the third party, (2) the requester provides proof of death, or (3) the requestor demonstrates a public interest in the records sufficient to outweigh the third party's individual privacy rights." *Id.* at 6 ¶ 13. Subsequently, the FBI modified its *Glomar* response after determining that Congressman Rohrabacher waived his privacy interests by making public statements about the 2012 meeting, and conducted a search for responsive records. Seidel Decl., ECF No. 24-1 at 9-10 ¶ 18. Plaintiffs challenged the adequacy of the FBI's searches. *Id.* at 19 ¶ 38.

Plaintiffs filed this action on August 24, 2017. *See* Compl., ECF No. 1. The FBI released 230 responsive pages pertaining to Congressman Rohrabacher between January and March 2018, and 29 pages in November 2018. *See, e.g.*, Def.'s SOMF, ECF No. 24 at 5 ¶¶ 6-10; Pls.' Resp. to Def.'s SOMF, ECF No. 25-1 at

2-3; Seidel Decl., ECF No. 24-1 at 21 ¶ 43. The FBI withheld

certain documents and redacted information under FOIA Exemptions

3, 6, 7(C), (7)(D), and (7)(E).[4] Def.'s SOMF, ECF No. 24 at 5 ¶

7, 6 ¶ 10. As the FBI made its productions, the parties filed

cross-motions for summary judgment in May and June 2018,

respectively. *See generally* Docket of Civil Action No. 17-1728.

After litigation had already begun, Plaintiffs learned that

Congressman Rohrabacher, Mr. Manafort, and "a senior Company A

lobbyist" attended a March 2013 meeting about Ukraine in the

District of Columbia, and Plaintiffs sought the FBI's records

regarding the investigation into that meeting. Pls.' Cross-Mot.

Summ. J., ECF No. 16 at 12; *see also* Statement of Offense,

*United States v. Richard W. Gates III*, No. 17-201-2 (D.D.C. Feb.

23, 2018), ECF No. 206 at 7 ¶ 16 (stating that the "Member of

---

[4] Under FOIA, an agency must release all responsive documents
unless the information contained within such documents falls
within one of nine exemptions. *Summers v. U.S. Dep't of Justice*,
517 F. Supp. 2d 231, 236 (D.D.C. 2007) (Sullivan, J.) (citing 5
U.S.C. § 552(a),(b)). Exemption 3 permits an agency to withhold
information that is "specifically exempted from disclosure by
statute," provided that the statute either (i) "requires that
the matters be withheld from the public in such a manner as to
leave no discretion on the issue"; or (ii) "establishes
particular criteria for withholding or refers to particular
types of matters to be withheld[.]" 5 U.S.C. § 552(b)(3).
Exemption 6 protects "personnel and medical files and similar
files the disclosure of which would constitute a clearly
unwarranted invasion of personal privacy[.]" *Id.* § 552(b)(6).
Exemption 7 protects from disclosure "records or information
compiled for law enforcement purposes," but only to the extent
that disclosure of such records would cause an enumerated harm.
*Id.* § 552(b)(7).

Congress," who met with Mr. Manafort and the lobbyist, served "on a subcommittee that had Ukraine within its purview"). Congressman Rohrabacher's spokesperson confirmed that Congressman Rohrabacher was the "Member of Congress" referenced in the court filing, and that former Congressman Vin Weber, who was a lobbyist, attended the meeting. Pls.' SOMF, ECF No. 26-1 at 4 ¶¶ 12-13; *see also* Pls.' Ex. 8, ECF No. 26-3 at 37-38. After Congressman Rohrabacher publicly acknowledged his interactions with the FBI, the FBI confirmed that records existed for three categories: (1) "records reflecting communications between it and the Congressman in the performance of his official duties," Def.'s Opp'n, ECF No. 30 at 8; (2) records relating to communications between the Congressman and the FBI concerning the 2012 meeting, *id.* at 8-9; and (3) "records related to the statement of offense in the [Mr.] Gates prosecution that [Mr.] Manafort and a lobbyist for 'Company A' had met with a 'member of Congress,'" *id.* at 9.

The parties renewed their cross-motions for summary judgment in December 2018 and January 2019. In the second round of briefing, DOJ argued that it was entitled to summary judgment because it properly applied the *Glomar* response; it conducted adequate searches; it appropriately invoked Exemptions 3, 6, 7(C), 7(D), and 7(E); and it reasonably segregated the non-exempt information from the exempt information. Def.'s Renewed

Mot. for Summ. J. ("Def.'s Mot."), ECF No. 24 at 20-30.
Plaintiffs also moved for summary judgment, *see* Pls.' Mot., ECF
No. 26 at 1, arguing that: (1) the Defendant's declarations
constituted hearsay and the declarants lack personal knowledge,
*id.* at 6-8; (2) the *Glomar* response was unwarranted because the
"FBI has narrowly pierced the Glomar veil by carving out a
category of responsive documents," *id.* at 11; (3) the FBI
improperly invoked Exemption 7(C) because Congressman
Rohrabacher has a *de minimis* privacy interest, *id.* at 9-12; (4)
the FBI failed to conduct adequate searches of its investigative
records, *id.* at 16-24, and its records related to Congressman
Rohrabacher in his official capacity as a U.S. Congressman, *id.*
at 24-26; and (5) the FBI improperly withheld the names of
certain individuals because it had previously "officially
acknowledged" the identities of those persons in the released
documents, *see* Pls.' Reply, ECF No. 32 at 27-28.

On September 24, 2019, the Court ruled on the parties'
motions for summary judgment. The Court denied in part DOJ's
motion for summary judgment and held in abeyance Plaintiffs'
cross-motion with regard to the issue of whether the partial
*Glomar* response was proper. *Prop. of the People*, 405 F. Supp. 3d
at 118. The Court determined that it could not come to a
conclusion on the issue "at this level of generality" and
directed Defendant to submit a *Vaughn* index and an amended

declaration that addressed the balance between the privacy and public interests in light of the FBI's partial *Glomar* response. *Id.* at 118. The Court also ruled that the FBI's temporal limitation of its searches was improper and that the FBI improperly limited its searches, but rejected Plaintiffs' evidentiary objections. *Id.* at 120, 125. Finally, the Court deferred ruling on the issues of segregability and the applicability of the "official acknowledgment" doctrine with respect to the redactions in Bates-stamped pages 15, 175, 185, 186, 190, 197, and 221. *Id.* at 127.

Defendant filed an amended declaration on November 25, 2019. *See* Notice Filing Third Decl. Hardy ("Hardy Decl."), ECF No. 37. On January 29, 2020, the parties filed a joint motion requesting that the Court rule on the portion of Plaintiffs' cross-motion regarding the *Glomar* issue prior to Defendant submitting a *Vaughn* index. *See* Joint Mot., ECF No. 41. The Court granted the motion, *see* Min. Order (Jan. 30, 2020), and addresses the issue below.

## II. Legal Standard

A *Glomar* response is appropriate "only when confirming or denying the existence of records would itself 'cause harm cognizable under a FOIA exception.'" *ACLU v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013) (quoting *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1178 (D.C. Cir. 2011)). "When addressing an agency's

*Glomar* response, courts must accord 'substantial weight' to agency determinations." *Sea Shepherd Conservation Soc'y v. IRS*, 208 F. Supp. 3d 58, 89 (D.D.C. 2016) (citing *Gardels v. CIA*, 689 F.2d 1100, 1104 (D.C. Cir. 1982)). The agency must "tether its refusal to respond to one of the nine FOIA Exemptions." *Montgomery v. IRS*, No. 17-918, 2019 WL 2930038, at *2 (D.D.C. July 8, 2019) (citation omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (quoting *Gardels*, 689 F.2d at 1105).

"To overcome a *Glomar* response, the plaintiff[s] can either challenge the agency's position that disclosing the existence of a record will cause harm under the FOIA exemption asserted by the agency, or the plaintiff[s] can show that the agency has 'officially acknowledged' the existence of records that are the subject of the request." *James Madison Project v. Dep't of Justice*, 320 F. Supp. 3d 143, 148 (D.D.C. 2018). Here, Plaintiffs selected the first route to attack the FBI's partial *Glomar* response. Pls.' Mot., ECF No. 26 at 11. The FBI concedes that it was required to search for records that have been publicly confirmed by Congressman Rohrabacher. Def.'s Opp'n, ECF No. 30 at 12.

The FBI justifies its invocation of *Glomar* under Exemptions 6 and 7(C). *E.g.*, Def.'s Opp'n, ECF No. 30 at 9; Hardy Decl.,

ECF No. 30-1 at 3-4 ¶ 6, 5 ¶ 9. Both exemptions are foundationally similar. *See, e.g.*, *Garza v. U.S. Marshals Serv.*, No. 16-0976, 2018 WL 4680205, at *11 (D.D.C. Sept. 28, 2018) (Sullivan, J.); *Am. Ctr. for Law & Justice v. U.S. Dep't of Justice*, 334 F. Supp. 3d 13, 18 (D.D.C. 2018) (recognizing that "[c]ourts tasked with evaluating withholdings made pursuant to both statutory exemptions generally look first to the agency's justification under Exemption 7(C), because information properly withheld under Exemption 7(C) would also be covered by Exemption 6"). Plaintiffs focused on Exemption 7(C), *see, e.g.*, Pls.' Mot., ECF No. 26 at 11; Pls.' Reply, ECF No. 32 at 14, and the Court shall do the same.

Exemption 7(C) protects from disclosure records compiled for law enforcement purposes to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "[J]udicial review of an asserted Exemption 7 privilege requires a two-part inquiry." *FBI v. Abramson*, 456 U.S. 615, 622 (1982). The threshold requirement has been met here because it is undisputed that the FBI's records were compiled for law enforcement purposes. *See* 5 U.S.C. § 552(b)(7); *see also* Seidel Decl., ECF No. 24-1 at 7 ¶ 15 ("[T]he records include contacts by Congressman Rohrabacher to the FBI regarding its duties and responsibilities as a law enforcement and national security

agency, and the information discussed between the FBI and Congressman relate to the FBI's investigative role and obtained from investigative records."). Next, the FBI "must show that release of those records 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'" *Prop. of the People v. U.S. Dep't of Justice*, 310 F. Supp. 3d 57, 65-66 (D.D.C. 2018) (quoting 5 U.S.C. § 552(b)(7)(C)).

The Court must "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992). The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991). Where a FOIA request "is made for FBI investigative records regarding a particular individual, the FBI's mere acknowledgment that it possesses responsive records associates the individual named in the request with suspected criminal activity." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1091 (D.C. Cir. 2014). As such, "the FBI's *Glomar*

response, absent a countervailing public interest in disclosure, [is] appropriate under Exemption 7(C)." *Roth*, 642 F.3d at 1179.

## III. Analysis

### A. There Are Interests on Both Sides of the Scale

The Court in its September 24, 2019 memorandum opinion addressed both the privacy interest and the public interest at stake in this case. *See Prop. of the People*, 405 F. Supp. 3d at 114-17.

The Court first turned to Congressman Rohrabacher's privacy interest and found that he has "more than a *de minimis* privacy interest in the contents of any FBI investigative records." *Id.* at 113-14. The Court found instructive the D.C. Circuit's decision in the FOIA case *Citizens for Responsibility and Ethics in Washington ("CREW") v. Dep't of Justice*. In *CREW*, Tom DeLay—the former Majority Leader of the U.S. House of Representatives—publicly announced that he had cooperated with the FBI's investigation into a public corruption scandal, that he had been under investigation, and that the Justice Department had decided not to pursue criminal charges against him. 746 F.3d at 1087, 1089, 1091-92. The D.C. Circuit determined that Mr. DeLay had "two potential privacy interests at stake": (1) "avoiding the stigma of having his name associated with a criminal investigation[,]" *id.* at 1091; and (2) "[a]lthough [Mr.] DeLay's action [i.e. his public statements] lessened his [privacy]

interest in keeping secret the *fact* that he was under investigation, he retained a second, distinct privacy interest in the *contents* of the investigative files[,]" *id.* at 1092 (emphasis in original). The D.C. Circuit ultimately found that "[Mr.] DeLay's privacy interest in the contents of the investigative files [was] not insubstantial," even though he was a public official at the time. *Id.* In view of the D.C. Circuit's reasoning in *CREW*, this Court determined Congressman Rohrabacher's privacy interest in the records to be "not insubstantial." *Prop. of the People*, 405 F. Supp. 3d at 114.

The Court next turned to whether disclosure would advance the public interest, and found that the public interest in the case was "significant." *Id.* at 115 (quoting *Prop. of the People*, 310 F. Supp. 3d at 69). The Court again found the D.C. Circuit's decision in *CREW* instructive. There, the D.C. Circuit determined that there was a "weighty" public interest at stake because "[d]isclosure of the records would likely reveal much about the diligence of the FBI's investigation and DOJ's exercise of its prosecutorial discretion: whether the government had the evidence but nevertheless pulled its punches" where the FBI's records related to "a wide-ranging public corruption investigation as part of [the FBI's] ongoing efforts to root out systemic corruption within the highest levels of government." *CREW*, 746 F.3d at 1092-93. While noting that *CREW* was

14

distinguishable, the Court nonetheless acknowledged that Plaintiffs had, during the course of the litigation, "shifted their focus to the SCO's investigation into Russia's influence in the 2016 presidential election and the FBI's counterintelligence efforts" and had asked the Court to "require the FBI to exclude from its *Glomar* response any records which link [Congressman] Rohrabacher to Russian counterintelligence matters." *Prop. of the People*, 405 F. Supp. 3d at 115-16. In view of this shift, the Court stated that Plaintiffs had demonstrated that there is a public interest in "how the FBI handled the issue of threats posed by Russian intelligence to the U.S. political system." *Id.* (quoting Pls.' Mot., ECF No. 26 at 15 n.5). The Court concluded that "[c]learly, the American public has a right to know about the manner in which its representatives are conducting themselves and whether the government agency responsible for investigating and, if warranted, prosecuting those representatives for alleged illegal conduct is doing its job." *Id.* (quoting *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 840 F. Supp. 2d 226, 234 (D.D.C. 2012)).

The next step in the Court's inquiry was to balance the significant interests on both sides of the scale. However, the Court declined to weigh the balance due to the "level of generality," and instead directed DOJ to submit a *Vaughn* index.

*Id.* at 118. The Court therefore denied in part DOJ's motion for summary judgment and held in abeyance Plaintiffs' motion for summary judgment. *Id.* In view of the Court's Minute Order granting the parties' joint motion to resolve the *Glomar* issue on the current record, the Court addresses the balance of the competing interests below.

### B. The Balance of the Competing Interests Weighs in Favor of Non-Disclosure

The Court shall now consider anew the merits of the parties' arguments regarding the balance of the competing interests. The Court must consider whether disclosure regarding the existence or non-existence of records "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C); which, as noted above, involves balancing the public interest in disclosure against the privacy interest that would be compromised, *see Roth*, 642 F.3d at 1174. In balancing the competing interests, "[i]t is important to remember that, at this stage, the Court is considering only whether [Congressman Rohrabacher] has a privacy interest in the very existence of the requested records." *Judicial Watch, Inc. v. Dep't of Justice*, 415 F. Supp. 3d 71, 75 (D.D.C. 2019) (quoting *Wolf*, 473 F.3d at 374). "That is, while he may have a privacy interest in the *content* of any such records, the question in evaluating a *Glomar* response is whether

16

disclosure of their *existence* would 'cause harm cognizable under a[] FOIA exception.'" *Id.* Here, the Court is not persuaded that the balance weighs in favor of public disclosure.

First, it is significant to this analysis that Congressman Rohrabacher has not publicly confirmed that he was the subject of an investigation outside of the two meetings. The D.C. Circuit has "consistently held that Exemption 7(C) authorizes *Glomar* responses to comparable FOIA requests seeking information about particular individuals" when the subject of an investigation has not acknowledged that the investigation occurred. *PETA*, 745 F.3d at 543; *see also Beck v. U.S. Dep't of Justice*, 997 F.2d 1489, 1493-94 (D.C. Cir. 1993) (upholding *Glomar* response as to any complaints or other investigatory files concerning two named DEA agents); *Dunkelberger v. U.S. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990) (upholding *Glomar* response as to a specific FBI agent's disciplinary records).

Plaintiffs argue, however, that the privacy interests of Congressman Rohrabacher are "negate[d]" due to his statements to the media. Pls.' Mot., ECF No. 26 at 9. According to Plaintiffs, Congressman Rohrabacher acknowledged through statements to the media that: (1) the 2012 meeting occurred; (2) the 2012 meeting "had focused on his contact with one member of the Russian Foreign Ministry" who was in fact "an intelligence officer" he

had met during a congressional delegation to Moscow; (3) the FBI had informed him during the meeting that Russia had "targeted [him] to be recruited as an agent" and that Moscow "looked at [him] as someone who could be influenced"; and (4) he felt that "Russian intelligence" had been "after [him] since [he] was a teenager." *Id.* at 10-11. In addition, Congressman Rohrabacher's spokesperson confirmed that he was the member of Congress who had attended a March 2013 meeting about Ukraine. *Prop. of the People*, 405 F. Supp. 3d at 109. These statements, however, do not diminish Congressman Rohrabacher's privacy interests in the broad manner that Plaintiffs assert. While his privacy interest in the 2012 and 2013 meetings "evaporated" once he publicly acknowledged his involvement, *Judicial Watch*, 415 F. Supp. 3d at 75; his statements do not disclose that he was ever the target of an FBI investigation outside of his association with the two events. Despite his statements to the media, Mr. Rohrabacher therefore has more than a *de minimis* privacy interest in the existence of any FBI investigative records outside of the two meetings he has publicly acknowledged. *See Prop. of the People*, 405 F. Supp. 3d at 114; *see also U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989) (recognizing the distinction between "scattered disclosure of the bits of information contained in a rap sheet and revelation of the rap sheet as a whole"); *Judicial Watch,*

*Inc. v. U.S. Dep't of Justice*, 898 F. Supp. 2d 93, 104 (D.D.C. 2012) (rejecting plaintiff's argument that "would have the Court waive Ahmad's relevant privacy interests *in toto* based solely on the fact that he has, at one time, been associated with criminal activity"). And, as this Court has explained, this privacy interest remains despite Congressman Rohrabacher's status as a former public official. *See Prop. of the People*, 405 F. Supp. 3d at 114; *see also CREW*, 746 F.3d at 1094.

Second, although the Court has previously concluded that there existed a public interest in any records because disclosure could shed light on "how the FBI handled the issue of threats posed by Russian intelligence to the U.S. political system," *Prop. of the People*, 405 F. Supp. 3d at 117; this finding also was not based upon the public acknowledgment of an investigation by the FBI or Congressman Rohrabacher. Rather, critical to that determination was "the existence of news articles, of which the Court [took] judicial notice, reporting that the SCO investigated a September 2016 meeting between Congressman Rohrabacher and one of the President's former National Security Advisors." *Id.* at 115. But the news articles regarding the 2016 meeting were based on anonymous sources. *See* Julia Ainsley, *Mueller Probing Pre-Election Flynn Meeting With Pro-Russia Congressman*, NBC News (Nov. 10, 2017, 12:59 PM), https://www.nbcnews.com/news/us-news/mueller-probing-pre-

election-flynn-meeting-pro-russia-congressman-n819676 (citing "two sources with knowledge of the investigation"); Michael R. Blood, *Rouda Claims Historic Victory Over Republican Rohrabacher*, NBC4 (Nov. 10, 2018), https://www.nbclosangeles.com/news/local/Rouda-Declares-Victory-in-House-Race-Against-Rohrabacher-500204551.html (reporting that Congressman Rohrabacher's "name has come up in the investigation into Russian meddling in the 2016 presidential election" but that he had "denied any wrongdoing"). Thus, despite the accounts provided by the articles, the FBI's "own official acknowledgment that it had investigated [Congressman Rohrabacher] would [still] carry an added and material stigma" notwithstanding other entities' acknowledgment of investigations. *People for the Ethical Treatment of Animals v. Nat'l Inst. of Health* ("*PETA*"), 745 F.3d 535, 542 (D.C. Cir. 2014). In other words, "the fact that an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information." *Id.*; *cf. Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975) ("It is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so.").

It is true that "[o]ver the course of this litigation, Plaintiffs have shifted their focus to the SCO's investigation into Russia's influence in the 2016 presidential election and the FBI's counterintelligence efforts." *Prop. of the People*, 504 F.3d at 115. But without a public acknowledgment of an investigation by Congressman Rohrabacher or the FBI, this case is also easily distinguishable from *CREW*. As this Court recognized in its September 24, 2019 opinion, unlike in *CREW*, Plaintiffs here request records related to a particular individual, not a particular investigation. *Prop. of the People*, 405 F. Supp. 3d at 115. And "[f]or such requests, 'the public interest in understanding the agency's investigatory processes' ordinarily 'fails to outweigh the [subject's] substantial interest in nondisclosure.'" *Prop. of the People*, 310 F. Supp. 3d at 69 (quoting *PETA*, 745 F.3d at 543). In addition, unlike Mr. DeLay's public announcement in *CREW*, neither Congressman Rohrabacher nor the FBI has conceded that he was under investigation. *Id.*

Thus, despite the public interest in understanding an agency's investigatory process into Russia's influence in the 2016 presidential election and the FBI's counterintelligence efforts, the Court concludes that the public interest fails to outweigh Congressman Rohrabacher's privacy interest in nondisclosure. "[W]ithout more," the "[public] interest [is]

insufficient to justify disclosure when balanced against the substantial privacy interests weighing against revealing the targets of a law enforcement investigation." *PETA*, 745 F.3d at 543.

## IV. Conclusion

For the reasons set forth above, the Court **DENIES** Plaintiffs' motion for summary judgment regarding the *Glomar* issue. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:**   **Emmet G. Sullivan**
            **United States District Judge**
            **December 23, 2021**